UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:05-CV-48-F3

STEPHEN NORMAN OSTROV, )
    Plaintiff, )
)
v. ) ORDER
)
WALTER W. WINNER, II, )
CHAD A. WINNER, and )
S.S. WINNER QUEEN, )
    Defendants. )

This matter is before the court following a bench trial that began on September 11, 2006. Based on the evidence presented at the bench trial, the court issues the following:

## FINDINGS OF FACT

1. Plaintiff Stephen Norman Ostrov ("Mr. Ostrov") is a citizen and resident of Broward County, Florida.

2. *In personam* defendants Chad A. Winner[1] and Walter W. Winner, II ("Captain Winner") are citizens and residents of New Hanover County, North Carolina. The S.S. Winner Queen, an aluminum catamaran, is a 75 foot inspected vessel that can accommodate 150 passengers and is operated under the direction, ownership and control of Defendants Chad A. Winner and Captain Winner. The S. S. Winner Queen has a top speed of 17 knots.

3. The events of this action occurred on April 9, 2002, aboard the S. S. Winner Queen. That day, Captain Winner operated the S. S. Winner Queen, which had been chartered by Carolina Ocean Studies, Inc. for a seventh grade class field trip to the Carolina Beach inlet.

4. Carolina Ocean Studies is an organization that operates coastal and water based educational tours. Carolina Ocean Studies pays *in personam* defendants a flat fee to charter the S. S. Winner Queen. In return, defendants provide a vessel, master and crew to assist Carolina Ocean Studies staff in conducting the voyage and ensuring passenger safety.

---

[1] At the close of defendants' evidence, counsel for defendants moved for a directed verdict. This motion was allowed with respect to defendant Chad A. Winner, as no evidence was presented as to his liability or actions.

5. Mr. Ostrov and his wife, Mara Ann Ostrov ("Ms. Ostrov"), who had volunteered to act as chaperones, accompanied their son on the April 9, 2002 field trip aboard the S.S. Winner Queen.

6. Carolina Ocean Studies requires all participants to sign a participant agreement release and assumption of risk form. Prior to boarding the S. S. Winner Queen, Ms. Ostrov signed a release provided by Carolina Ocean Studies. Without the knowledge of Mr. Ostrov, Ms. Ostrov signed both her name and Mr. Ostrov's name on the release, which contained the following language:

> In consideration of the services of Carolina Ocean Studies, Inc., their agents, owners, officers, volunteers, participants, employees, and all other persons or entities acting in any capacity on their behalf (hereinafter collectively referred to as "COS") I hereby agree to release, indemnify, and discharge COS . . . as follows:
>
> . . .
>
> I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless COS from any and all claims, demands, or causes of action which are in any way connected with my participation in this activity or my use of COS's equipment or facilities, including any such Claims which allege negligent acts or omissions of COS.

7. Richard Cecelski, Director of Carolina Ocean Studies, testified that the seventh grade students were given a safety orientation during the bus ride to Carolina Beach. The parents and chaperones, who drove to Carolina Beach, were given a safety orientation upon boarding the S.S. Winner Queen. The Ostrovs were the last to board the S. S. Winner Queen and were not present for the safety orientation.

8. Approximately 72 passengers and 3 crew members were on board of the S.S. Winner Queen on the afternoon of April 9, 2002.

9. After boarding the vessel, Mr. and Ms. Ostrov went to the port side of the boat on the upper deck, near the Captain's wheelhouse. Ms. Ostrov sat on a bench just beside the Captain's wheelhouse, while Mr. Ostrov stood and held onto a railing which ran around the top deck of the boat. There was ample seating on the upper deck, but Mr. Ostrov chose to stand next to Ms. Ostrov. Both Mr. and Ms. Ostrov were within plain view of Captain Winner.

10. That day, at 4:04 a.m. eastern daylight time, the National Weather Service, Wilmington, North Carolina, issued its Coastal Marine Forecast for the area from Surf City to Cape Fear, extending 20 nautical miles from the shore. This forecast was broadcast on the NOAA weather channel, over the VHF radio and read as follows:

> ... SMALL CRAFT SHOULD EXERCISE CAUTION ...
> .TODAY ... S WIND 20 KT AND GUSTY. SEAS 5 FT. ISOLATED SHOWERS.

The NOAA weather forecast issued at 9:35 a.m. read as follows:

> ... SMALL CRAFT ADVISORY ...
> .THIS AFTERNOON ... S WIND 20 TO 25 KT AND GUSTS. SEAS 5 TO 6 FT. ISOLATED SHOWERS.

11. Captain Winner was aware of the weather forecasts.

12. Captain Winner operated the S.S. Winner Queen for a trip on the morning of April 9, 2002, which traveled in and out of the Carolina Beach inlet without incident.

13. The trip that is the subject of this action began at 1:00 p.m., when the S. S. Winner Queen left the dock and traveled toward the Carolina Beach inlet. At the dock, the water was calm and the wind speed was approximately 10 to 15 knots, which is not unusual for that area.

14. At approximately 1:30 p.m., the vessel turned into the Carolina Beach inlet. The vessel traveled east in the vicinity of buoys 3 and 4. In the inlet, the water was choppy and the wind speed was approximately 10 to 15 knots.[2] It was low tide and the tide was falling.

15. Mr. Cecelsky told Mr. Ostrov and other adults who were standing on the upper deck to "sit down and hold on tight." Despite this warning, Mr. Ostrov remained standing and held onto the railing.

16. To cross the shallow area between buoys 3 and 4, Captain Winner testified that he sped up to get the S. S. Winter Queen on a plane. The S. S. Winner Queen squats at certain

---

[2]At trial, there was conflicting testimony regarding the weather and wave conditions in the inlet. Plaintiff's counsel tendered Captain Donald W. Davis as an expert witness. Captain Davis testified regarding his opinion of the April 9, 2002 wave and weather conditions at Carolina Beach inlet based upon weather data from nearby locations. Specifically, Captain Davis attempted to extrapolate from data collected from Frying Pan Shoals, Wrightsville Beach and Fort Fisher. The court did not find Captain Davis's testimony to be persuasive.

3

speeds and Captain Winner prefers to "power it up" or speed up to approximately 13 knots to level it out in the shallow inlet.

17. Between buoys 3 and 4, the inlet has a depth of 7 feet and the S. S. Winner Queen has a draft of 4 feet. As such, Captain Winner testified that it is possible for the S. S. Winner Queen to enter the inlet without speeding up to get on a plane.

18. As it was entering the inlet, the S.S. Winner Queen went down into a deep swell and a large wave broke over the front of the boat. The wave hit the vessel's bulkhead, sending spray straight up into the air. Captain Winner did not see the wave until it broke.

19. As the bow went down, Mr. Ostrov's feet left the boat deck and when the bow rose again, he was slammed down onto the deck. After falling onto the deck, Mr. Ostrov experienced excruciating pain. In response to Mr. Ostrov's injury, Captain Winner turned the boat around and called for medical attention.

20. When the S. S. Winner Queen arrived at the dock, Mr. Ostrov exited the vessel with the assistance of emergency medical technicians and was driven by ambulance to the hospital.

21. As a result of the accident, Mr. Ostrov sustained a burst fracture of his third lumbar vertebra. He spent approximately one week in the hospital and had to wear a brace 24 hours a day for eight weeks. Mr. Ostrov returned to work part time on May 1, 2002 and resumed working full time at his previous position as sales manager of a car dealership at the end of June 2002. While he was out of work and working part time, Mr. Ostrov received his full wages. Mr. Ostrov has not seen a doctor for his injury since October14, 2002 and does not take medication for his pain.

22. Due to his back injury, Mr. Ostrov' testified that his ability to play sports with his son and to exercise are more limited than before the accident. It is painful for Mr. Ostrov to bend down and he leans to the right. Mr. Ostrov testified that he works through the pain and his back injury does not affect his current income.

23. On March 18, 2005, Mr. and Ms. Ostrov filed a Complaint alleging claims of negligence against defendants. Ms. Ostrov sought $25,000 in damages for loss of consortium

and Mr. Ostrov sought damages in the amount of $16,315.12 for medical bills and an additional $375,000.00 in compensatory damages. Ms. Ostrov subsequently withdrew her claim for loss of consortium.

## LEGAL STANDARDS

### I. Jurisdiction

This case arises under the court's admiralty and federal jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1333. The standards of federal maritime law govern Mr. Ostrov's claim against Captain Winner, as "[a]ll cases involving a tort committed on navigable water, whether brought under federal admiralty jurisdiction, in state court under the 'savings to suitor' clause, or in federal court under diversity jurisdiction, are governed by admiralty law." *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981).

### II. Negligence

Mr. Ostrov asserts that Captain Winner negligently operated the S. S. Winner Queen, causing Mr. Ostrov's back injury. "Negligence under admiralty law is simply the failure to use reasonable care under the circumstances." *Moore v. Matthews*, 445 F. Supp. 2d 516, 522 (D. Md. 2006). To prevail on a claim of negligence, "[t]he plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

#### A. Duty

In general, "[i]t is a settled principle of maritime law that a shipowner or vessel operator owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). Additionally, a duty of care can arise from a statute or regulation. *See Nat'l Shipping Co. of Saudia Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1450 (E.D. Va. 1996)("The most common way negligence is shown in the maritime setting . . . is by proving a violation of some rule of navigation.").

The S. S. Winner Queen is a vessel weighing less than 100 gross tons that carries more than six passengers, including at least one for hire. As such, it must meet the applicable safety requirements set forth in the Code of Federal Regulations. *See* 46 C.F.R. § 175.110(a). Specifically, the master of the vessel is required to "operate the vessel keeping the safety of the passengers and crew foremost in mind by directing the vessel in order to prevent a casualty." 46 C.F.R. § 185.304(a). Factors to consider when operating the vessel include:

    (1) The current(s) velocity and direction of the transiting area;
    (2) Tidal state;
    (3) Prevailing visibility and weather conditions;
    (4) Density of marine traffic;
    (5) Potential damage caused by own wake;
    (6) The danger of each closing visual or radar contact;
    (7) Vessel's handling characteristics; and
    (8) Magnetic variation and deviation errors of the compass.

*Id.* The regulations also require the master to ensure that passengers receive a safety orientation and special instructions when emergencies occur. *See* 45 C.F.R. §§ 185.506, 185.510, 185.512.

Captain Winner also was required to comply with the Inland Navigation Rules, as codified by 33 U.S.C. §§ 2005 and 2006. Rule 5 of the Inland Navigation Rules provides that "every vessel shall at all times maintain a proper look-out by sight and hearing as well as the available means appropriate in the prevailing circumstances and conditions, so as to make a full appraisal of the situation and the risk of the collision." 33 U.S.C. § 2005. Under Rule 6, every vessel must "proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." 33 U.S.C. § 2006. A safe speed is determined by considering:

> (i) the state of visibility;
> (ii) the traffic density including concentration of fishing vessels or any other vessels;
> (iii) the maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;
> (iv) at night the presence of background light such as from shores lights or from back scatter of her own lights;
> (v) the state of wind, sea, and current, and the proximity of navigational hazards;
> (vi) the draft in relation to the available depth of water.

33 U.S.C. § 2006(a).

After reviewing the applicable statutes, regulations and settled maritime law, the court finds that Captain Winner, as the operator of the S. S. Winner Queen, owed a duty of reasonable care to Mr. Ostrov, a passenger on the S. S. Winner Queen. Accordingly, the court must next consider whether Captain Ostrov breached his duty.

**B. Breach of Duty**

The breach of a recognized duty must be determined "by reference to the surrounding circumstances and the knowledge, or lack thereof, on the part of the alleged tortfeasor." *Eklof Marine Corp. v. United States*, 762 F.2d 200, 204 (2d Cir. 1985). Here, Captain Winner operated the S. S. Winner Queen on April 9, 2002 for a trip to the Carolina Beach inlet. That day, the weather forecast included a small craft advisory. Captain Winner was aware of the weather report and was familiar with the conditions in the Carolina Beach inlet, where the water is shallow and generally rougher due to the water passing through the narrow inlet. As the S. S. Winner Queen entered the inlet, the water was choppy and the wind speed was approximately 10 to 15 knots. It was low tide and the tide was falling. Despite the weather, tide and wave conditions, Captain Winner increased the speed of the S. S. Winner Queen to approximately 13 knots as he entered the shallow inlet. Captain Winner chose to speed up in order to plane the S. S. Winner Queen, but testified that he could have progressed through the inlet without increasing the speed of the vessel.

Based upon the evidence, the court concludes that Captain Winner created a dangerous situation by failing to operate the S. S. Winner Queen at a safe speed when he entered the Carolina Beach inlet. Captain Winner knew of the weather, tide and wave conditions and could have progressed through the inlet more slowly, but chose to speed up to enter the inlet. *Cf. Proctor v. Tsao*, 1998 WL 708689 at *5 (4th Cir. Sept. 24, 1998) (affirming district court's determination that plaintiff breached his duty of reasonable care to passengers when he drove a boat at an excessive speed in order to plane the vessel, but evidence suggested that the vessel could have planed at a lower speed). Consequently, the court finds that Mr. Ostrov has met his burden of proving, by a preponderance of the evidence, that

7

Captain Winner breached his duty of care when he sped up to enter the inlet despite the wave and weather conditions.

### C. Injury and Causation

The court also concludes that Mr. Ostrov has met has met his burden as to the elements of proximate causation and injury. In admiralty actions, proximate cause is "that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened." *Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc.*, 774 F.2d 648, 655 (4th Cir. 1985)(internal citations omitted). The court finds that Captain Winner's failure to operate the S. S. Winner Queen at a reasonable speed when entering the inlet caused Mr. Ostrov's injury.

The court also finds, however, that Mr. Ostrov contributed to the injury by failing to heed Mr. Cecelsky's warning to "sit down and hold on tight." Liability in admiralty actions is "allocated among the parties proportionately to the comparative degree of their fault." *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411 (1975); *see Pope & Talbot v. Hawn*, 346 U.S. 406, 409 (1953)("Exercising its traditional discretion, admiralty has developed and now follows its fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires."). Here, the court finds that Mr. Ostrov's failure to heed the warning to sit down renders him 50% at fault for his injuries.

## III. Release of Liability

Finally, the court addresses Captain Winner's argument that the release of liability signed by Ms. Ostrov bars Mr. Ostrov's claim of negligence. At trial, the court found credibility in Ms. Ostrov's testimony that she signed both her name and Mr. Ostrov's on the release. Additionally, Mr. Ostrov testified that he had no knowledge of the release. Consequently, the court concludes that Mr. Ostrov did not knowingly and willingly release Carolina Ocean Studies and all entities working on its behalf from liability for negligence. *See, e.g., Olivelli v. Sappo Corp., Inc.*, 225 F. Supp. 2d 109, 116 (D.P.R. 2002)("[i]n assessing the validity of a waiver, courts almost universally consider the following: (1) *whether the person signing the waiver has informed consent*; (2) whether the clause was inconsistent with

public policy; and (3) whether the clause constitutes an invalid adhesion contract." (emphasis added)); *Miller v. United States*, 308 F. Supp. 2d 604, 613 (D. Md. 2004)(holding that liability waiver did not bar Plaintiff's claims because there was insufficient evidence that Plaintiff signed the waiver).

## IV. Damages and Interest

When determining the appropriate amount of damages, courts must consider factors including medical expenses, pain and suffering, loss of income, disfigurement, loss of enjoyment of life and loss of family services. *Schumacher v. Cooper*, 850 F. Supp. 438, 453 (D.S.C. 1994). The evidence in this case established that, as a result of his injury, Mr. Ostrov experienced excruciating pain and sustained a burst fracture of his third lumber vertebra. Mr. Ostrov had medical bills in the amount of $16, 315.12, but did not suffer any loss of income.[3] Additionally, Mr. Ostrov spent one week in the hospital, months in a brace and continues to experience pain that limits his ability to engage in physical activities. The court, therefore, finds that Mr. Ostrov is entitled to recover $180,000 for his medical bills and pain and suffering. As discussed above, the court finds Mr. Ostrov to be 50% at fault for his injury, so this award must be reduced to $90,000.

Next, the court must consider whether pre-judgment interest would be appropriate in this action. In admiralty actions, "pre-judgment interest [calculated from the date of casualty] is required in the absence of any other peculiar or exceptional circumstances." *Nat'l Shipping Co. of Saudi Arabia v. United States*, 95 F. Supp. 2d 482, 496 (E.D.Va. 2000) (citing *City of Milwaukee v. Cement Division, Nat'l Gypsum Co.*, 515 U.S. 189 (1995)). The rate of interest is within the sound discretion of the court. *Id.*

Here, the court finds that there are no exceptional circumstances, such as a delay by the prevailing party in filing suit, that would persuade the court to bar pre-judgment interest. The court also finds that the post-judgment interest rate scheme set out in 28 U.S.C. § 1961 is

---

[3]At the trial, Mr. Ostrov testified that his injuries may have affected his earning power, as he was not as equipped to motivate the sales team at the car dealership and was ultimately fired. The court found this testimony to be speculative and was not persuaded that Mr. Ostrov's injury caused a reduction in his earning capacity.

9

a fair measure of pre-judgment interest in this action. *See id.*(borrowing from post-judgment interest rate scheme in 28 U.S.C. § 1961 to calculate pre-judgment interest). Consequently, Mr. Ostrov is entitled to pre-judgment interest from the date of his injury, April 9, 2002, until the date of this order and post-judgment interest from the date of this order until the judgment is satisfied in an amount in accordance with 28 U.S.C. § 1961.

Based on the foregoing findings of fact and applicable legal standards, the court makes the following:

## CONCLUSIONS OF LAW

1. That the parties are properly before the court, have been properly designated, and there is no question of misjoinder or nonjoinder of the parties;

2. This court has jurisdiction of the subject matter of the parties;

3. The negligence of both parties contributed to Mr. Ostrov's injury;

4. Captain Winner, as master of the S. S. Winner Queen, owed a duty of reasonable care to Mr. Ostrov, his lawful passenger. Captain Winner breached the duty of reasonable care by failing to operate the S. S. Winner Queen at a safe speed. Mr. Ostrov suffered an injury and the injury was caused by Captain Winner's breach of his duty of reasonable care. Consequently, Captain Winner was negligent in failing to operate the S. S. Winner Queen at a safe speed, taking into consideration the weather and wave conditions in the Carolina Beach inlet;

5. Mr. Ostrov was negligent in remaining standing despite Mr. Cecelski's warning to sit down;

6. Mr. Ostrov was 50% at fault for his injuries and Captain Winner was 50% at fault for Mr. Ostrov's injures;

7. Plaintiff Stephen Norman Ostrov is entitled to recover 50% of his damages, for a total of $ 90,000 plus pre-judgment interest from the date of his injury, April 9, 2002, until the date of this order and post-judgment interest from the date of this order until the judgment is satisfied in an amount in accordance with 28 U.S.C. § 1961;

8. Mr. Ostrov did not knowingly and willingly release Carolina Ocean Studies and all entities working on its behalf from liability for negligence. Consequently, the release does not bar Mr. Ostrov's claim of negligence against Captain Winner.

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, it hereby is ADJUDGED that Plaintiff Stephen Norman Ostrov has demonstrated that Defendant Walter W. Winner, II was negligent by failing to operate the S. S. Winner Queen at a safe speed. Judgment therefore is for Plaintiff Stephen Norman Ostrov in the amount of $90,000 plus pre-judgment interest from the date of his injury, April 9, 2002, until the date of this order and post-judgment interest from the date of this order until the judgment is satisfied in an amount in accordance with 28 U.S.C. § 1961.

SO ORDERED.

This the 26 day of February, 2007

James C. Fox
United States District Judge